BROOKS & BROOKS, LTD. v. EASTON'S CULLIGAN WATER CONDITIONING, OF R. D. 1

No. 758SC623

(Filed 17 December 1975)

1. **Evidence § 41— direct examination of witness — no invasion of province of jury**

Questions put to plaintiff's secretary-treasurer by counsel for plaintiff concerning changes made by the witness in an offer to purchase did not call for an expression of opinion by the witness on a question of law and did not invade the province of the jury.

2. **Contracts § 26— breach of contract — competency of evidence**

In an action for breach of contract to purchase a water treatment business, the trial court did not admit incompetent evidence by allowing officers of plaintiff to testify that the average life of a water tank was 20 years, that the business had good potential for growth, and the reasons for offering the business for sale, since the testimony was based on the personal knowledge of the witnesses gained through their own experience with the business.

APPEAL by defendant from *Webb, Judge.* Judgment entered 22 February 1975 in Superior Court, LENOIR County. Heard in the Court of Appeals 12 November 1975.

This is an action for breach of contract, with a counter-claim by defendant.

Plaintiff offered evidence tending to show the following: Until 2 January 1973 it was the owner of a water treatment business in Wilmington. On 21 November 1972 defendant submitted a written offer to purchase the assets of the business. The offer provided that among the assets of the business to be turned over to defendant, there would be 615 water treatment tanks, warranted to be in usable condition. If less than 615 tanks were turned over to defendant in usable condition, the purchase price would be reduced by $50.00 for each missing or unusable tank. Similar reductions in the purchase price would be made if other assets of the business were not provided to defendant as specified in the offer to purchase. Plaintiff's secretary-treasurer, Craven Brooks, crossed out the figure "615" wherever it appeared on the written offer to purchase, replaced it with the figure "515," and initialed each such change. On 20 December 1972 plaintiff agreed to sell the business to defendant, and it was agreed that the purchase price would be $42,000.00, with $32,000.00 to be paid immediately and $10,000.00 within ninety days. On 2 January 1973 plaintiff and defendant executed a written "Sales Agreement," which incorporated by reference the offer to purchase. The offer to purchase, with the changes made by plaintiff's secretary-treasurer, was attached to the "Sales Agreement." Defendant failed to make the $10,000.00 payment required within 90 days of the sale. Plaintiff admitted that defendant was entitled to certain minor adjustments in the purchase price, totaling $952.58, but aside from these minor adjustments, the assets of the business were turned over to defendant in usable condition.

Defendant offered evidence tending to show the following: At a negotiating session on 20 December 1972, it was agreed that the number of tanks to be turned over to defendant in usable condition would be increased from 515 back to the original figure of 615. Many of the tanks that were turned over were not in usable condition. Instead of supplying 615 usable tanks, plaintiff supplied only 386, for a deficiency of 229 tanks, entitling defendant to a reduction of $11,450.00 in the purchase price. There were also numerous other deficiencies in the business assets turned over to defendant, entitling defendant to additional reductions in the purchase price. Since the reductions in the purchase price were greater than the unpaid balance of

$10,000.00, defendant owed plaintiff nothing and was entitled to a recovery from plaintiff.

The jury returned a verdict for plaintiff in the amount of $6,461.00. Judgment was entered accordingly, and defendant appealed.

*Jeffress, Hodges, Morris & Rochelle, P.A., by Thomas H. Morris, for plaintiff appellee.*

*White, Allen, Hooten & Hines, P.A., by Thomas J. White III, for defendant appellant.*

VAUGHN, Judge.

It was defendant's position in the pleadings, and its contention at the trial, that the initial offer to purchase made by defendant was rejected by plaintiff by making alterations thereon as to the number of tanks to be guaranteed and the form and manner of payment. Defendant further alleged and contended that the number of tanks to be guaranteed and the purchase price and manner of payment and provision for adjustments was subsequently agreed upon on December 20, 1972, and that the formal sales agreement dated January 2, 1973 carried forward the understanding of the parties as contended by defendant. Plaintiff, on the other hand, contended that the alterations made by one of its officers on the original offer to purchase was acceded to and accepted by defendant and that the number of tanks stated therein, and not the number of tanks stated in the bill of sale, was the number of tanks guaranteed when the documents were attached to the formal sales agreement as exhibits thereto when the formal sales agreement was ultimately executed January 2, 1973.

[1]  When examining Craven Brooks about defendant's offer to purchase and the agreements of 20 December 1972 and 2 January 1973, counsel for plaintiff referred to the offer to purchase as the "agreement" that "was entered into first" and asked whether Brooks had "amended" the offer to purchase by striking out the figure "615" and inserting "515." Defendant contends in its first argument that these questions called for an expression of opinion on a question of law and invaded the province of the jury. The questions did not invade the province of the jury, but were merely designed to bring out the facts concerning the chronology of the transaction and the changes

made by Brooks in the written document submitted by defendant. The testimony elicited was relevant and material.

[2]    In its second argument, defendant contends that the court admitted incompetent evidence by allowing officers of plaintiff to testify that the average life of a water tank was 20 years, that the business had a good potential for growth and the reasons for offering the business for sale. It seems to us that the testimony was based on the personal knowledge of the witnesses, gained through their own experience with the business and was properly admitted. Defendant, on cross-examination, had previously elicited testimony from plaintiff's witnesses relating to their reasons for offering the business for sale.

We have carefully examined defendant's assignments of error directed to the charge of the court. We find no error in the charge that could have been prejudicial to defendant.

No error.

Judges BRITT and ARNOLD concur.